**Mark S. DeMarco**
Attorney At Law
2027 Williamsbridge Road
Bronx, New York 10461
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

February 17,  2016

The Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**BY ECF & ELECTRONIC MAIL**

Re:   *United States v. John Todd Williams*
      **14 Cr. 784 (AT)**

Your Honor:

At Mr. Williams's request, this letter is submitted to respectfully request that this Court reconsider its previously entered order of  June 23 2015, committing him to the custody of the Attorney General  and detaining him pending trial.  Due to changed circumstances[1] discussed below, it is both appropriate to consider the imposition of conditions of release that will serve to reasonably assure Mr. Williams's appearance at trial and it is also essential that he be released from custody subject to strict conditions of release in order that he be able to meaningfully participate in his defense and receive effective assistance of counsel.

---

[1]18 U.S.C. § 3142(f)(2) provides, in pertinent part, that:

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

1

Hon. Analisa Torres
February 17, 2016

### Procedural History of Detention Proceedings

Mr. Williams was arrested on November 18, 2014, in the Northern District of Georgia and he was presented in this district on December 9, 2014.  On March 13, 2015, Magistrate Judge James C. Francis denied Mr. Williams's request for bail.

By a letter dated June 19, 2015, Mr. Williams, through counsel, requested that this Court reconsider Magistrate Judge Francis's decision and moved for bail pursuant to *18 U.S.C. § 3142(a)(2)* and the *Fifth*, *Sixth*, and *Eighth Amendments* to the *United States Constitution*.

At the outset, it is important to note that Mr. Williams does not seek to re-litigate the findings of Judge Francis or this Court.  However, he disagrees with any previous findings and the government's position that he is a danger to the community or that his poses a risk of flight.  Nevertheless, since this Court's decision and permanent order of detention dated June 23, 2015, circumstances have changed that permit this Court to reconsider that order and reopen the detention hearing

### Reconsideration of Bail

The Bail Reform Act of 1984 requires pre-trial release on a personal recognizance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *18 U.S.C. § 3142(b)*.

If the district court determines that release on the defendant's personal recognizance creates a risk of flight or a danger to the community, "the law still favors pre- trial release," *United States v. Sabhnani,  493 F.3d 63, 75 (2d Cir. 2007)*, but "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community," *18 U.S.C. § 3142(c)(1)(B)*.

Only if the district court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" shall the court "order the detention of the person before trial." *18 U.S.C. § 3142(e)*. "Under this statutory scheme, 'it is only a limited group of offenders who should be denied bail pending trial.'" *Sabhnani, 493 F.3d at 75 (quoting United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987))* (internal quotation marks omitted)

Once a Court has issued a detention order, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *18 U.S.C. §*

2

Hon. Analisa Torres
February 17, 2016

*3142(f)(2)*.  "New and material information for *Section 3142(f)(2)(B)* purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009)* (citation omitted). Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened. *See U.S. v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991); U.S. v. Hare, 873 F.2d 796, 799 (5th Cir. 1989).*

### Danger to the Community

Although Mr. Williams has a criminal history, the government has not proffered evidence of any specific and recent violent acts by the defendant in recent years.  Nor have they placed him in the company of other violent individuals.  Indeed, in this fraud case, the government does not allege any violence by Mr. Williams.  Nor has the the government placed him in the company of violent individuals.

As Mr. Williams noted in his prior bail application, the seriousness of the charge that he is facing does not place him in that "limited group of offenders" who should be denied bail pending trial. *See Shakur*, 817 F.2d at 195.  Within the past fifteen years, district courts have consistently approved the pretrial release of defendants facing serious fraud charges. Some of these cases include: *United States v. Bernard Madoff*, 09 Cr. 213 (DC) (Defendant Madoff, facing a life sentence, was charged with a $50 billion fraud scheme in the Southern District of New York); *United States v. Gregory Bell*, 09 Cr. 269 (RHK) (Defendant Bell, a hedge fund manager, was charged with conspiracy to commit wire fraud as part of a $3.5 billion Ponzi scheme from 1995 to 2008 in the District of Minnesota); *United States v. Richard Scrushy*, 03 Cr. 530 (BE) (Defendant Scrushy, the CEO of Health South Corporation, faced a life sentence after being charged with conspiracy, mail, wire and securities fraud and other related charges as part of a $2.7 billion fraud scheme in the Northern District of Alabama and was granted pre-trial release with conditions); *United States v. Henry T. Nicholas and William J. Ruehle*, 08 Cr. 139 (CJC) (Defendant Broadcom executives charged with $1 billion stock-options backdating fraud scheme in the Central District of California. Defendant Nicholas was also charged in a narcotics conspiracy); *United States v. Jeffrey Skilling and Kenneth Lay*, 02 Cr. 73 (Defendants, the President and CEO of Enron, were charged with wire and securities fraud and other related charges in a multi-billion dollar fraud scheme in the Southern District of Texas); *United States v. John Rigas*, 02 Cr. 1236 (Defendant executive with Adelphia Communications, was charged with wire and securities fraud in a $2.3 billion scheme in the Southern District of New York); *United States v. Bernard Ebbers*, 02 Cr. 1144 (Defendant CEO of WorldCom, was charged with conspiracy to commit securities fraud and other related charges in a $11 billion fraud scheme in the Southern District of New York).

Hon. Analisa Torres
February 17, 2016

**Risk of Flight**

     Mr. Williams is 49 years old and a United States citizen. He served in the Army National Guard from 1985 until 1989 when he was honorably discharged. Mr. Williams has lived in the same community in the Atlanta area for the last twenty years. He has strong community and family ties. Prior to his arrest, he was caring for and financially providing for his three daughters and he has maintained consistent employment for most his adult life.

     The Bail Reform Act provides that an order of detention pending trial is appropriate if "no conditions or combination of conditions will reasonably assure the appearance of the person as required." *18 U.S.C. § 3142(e)*. (Emphasis added). It is crucial to note, however, a finding that a particular defendant may present a "flight risk" does not end the matter with respect to whether detention should be ordered.In light of the fact that the Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required," § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."

     If the court determines that a defendant's release on an unsecured bond presents a risk of flight, the concern at issue in this case, the law still favors pre-trial release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required." *Id. § 3142(c)(1)(B)*. (Emphasis added.) Only if a detention hearing shows "that no condition or combination of conditions will reasonably assure the appearance of the person as required ... shall [the court] order the detention of the person before trial." *Id. § 3142(e)*. Under this statutory scheme, "it is only a 'limited' group of (alleged) offenders who should be denied bail pending trial." *Shakur, 817 F.2d at 195* (quoting S. Rep. No. 98-225,at 7(1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189).

     Because the law thus generally favors bail release, the government carries a dual burden in seeking pre-trial detention. First it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. *See United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986)*. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court. *See United States v. Shakur, 817 F.2d at 195* ("The burden of proof is on the government to prove the absence of such conditions by a preponderance of the evidence."); *United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985)*. *United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007)*. (Emphasis added). *See also, United States v. Madoff, 586 F.Supp.2d 240, 247-248 (S.D.N.Y. 2009)* ("The Government's task is not insubstantial at this second stage. In most cases, release is the presumptive state. *See 18 U.S.C. §§ 3142(b) & (c).* 'The court should also bear in mind that it is only a limited group of (alleged) offenders who should be denied bail pending trial.' "(Citations omitted)). This traditional right to bail permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to trial.

4

Hon. Analisa Torres
February 17, 2016

## Length of Confinement at the MDC & Medical Condition

Mr. Williams has been incarcerated since his arrest and at the Metropolitan Detention Center in Brooklyn since his presentment in New York.   Since the majority of his family resides outside of New York State, he has received no social visits.  Mr. Williams has been in continuous federal custody since his arrest or roughly 15 months as of this writing.  This Court should find this length of detention troubling.

Furthermore, prior to Mr. Williams's current incarceration, he had never experienced any prolonged illness and was otherwise in excellent health; all of that has now changed. Since his incarceration in this case, he has experienced a great deal of back and hip pain.  He was examined and underwent radiological exams which revealed moderate degenerative disc disease of his back and "severe degenerative joint disease" and avascular necrosis of the bilateral femoral head.[2]   The severity of pain had made it difficult for Mr. Williams to focus on the facts and issues of his case, which is extremely problematic in light of the sheer scope and magnitude of discovery in this case, the complexity of the legal and factual issues presented, and the enormity of pre-trial preparation that lies ahead, all which require Mr. Williams to be mentally and emotionally fit.

## Voluminous Discovery

As this Court is well aware, the discovery in this case is voluminous and consists of 4 discs containing thousands of pages, and two whole hard drives containing terabytes of additional discovery.  It consists of, among other things, financial records, business records, bank records, corporate records, internal memoranda, emails, correspondence and telephone records.  Beyond being incredibly voluminous, these documents are not self-explanatory and are difficult to comprehend or to put into context, without explanation from someone who has knowledge of the inner-workings of the debt collection business.

It is essential that Mr. Williams be able to work closely with his entire legal defense team in an unencumbered way as discovery documents are being reviewed in order to help them understand the nature of the various business dealings and transactions that will be the focus of the government's case. He must be available to assist them in their daily efforts to re-construct

---

[2] Avascular necrosis (AVN) of the femoral head is an increasingly common cause of musculoskeletal disability, and it poses a major diagnostic and therapeutic challenge. Although patients are initially asymptomatic, avascular necrosis (AVN) of the femoral head usually progresses to joint destruction, requiring total hip replacement (THR), usually before the fifth decade (see the images below). In fact, 50% of patients with avascular necrosis experience severe joint destruction as a result of deterioration and undergo a major surgical procedure for treatment within 3 years of diagnosis.  Femoral head collapse usually occurs within 2 years after development of hip pain.

Hon. Analisa Torres
February 17, 2016

and unravel the various events and circumstances which form the basis of the allegations in the indictment. What may appear to defense counsel at first blush as not being particularly germane to any issue in the case, could well prove otherwise upon being examined by Mr. Williams. With access to the discovery by means of the computer litigation support software that organizes, classifies and searches it, Mr. Williams can do more than review individual documents. He can help counsel understand these documents and their relationship to the debt collection business. Indeed, Mr. Williams's ability to work closely with his entire legal defense team in order to assist them in understanding the myriad business dealings and financial issues that this case presents and the potential relevance and significance of certain documents to the defense of the allegations, is constitutionally indispensable.

### Ability to Assist in Own Defense

While Mr. Williams has been incarcerated, it has been impossible to productively engage in any preparation for trial with his assistance. His confinement isolates him from all meaningful document review and analysis as well as any collaboration with his attorneys in the review of the case discovery. Obviously, this is not your run-of-the-mill alleged fraud prosecution. The sheer magnitude  and scope of the discovery, the complexity of the legal and factual issues that will inevitably arise, the number of witnesses that will need to be interviewed, the necessity of presenting expert witness testimony and the concomitant need to consult with other expert witnesses cannot be accomplished with Mr. Williams incarcerated.

As previously stated, the discovery provided in this case is incredibly voluminous. To cope with the massive scale of the discovery its investigation produced, the defense was authorized by this Court to retain an Internet based litigation support company.   However, Mr. Williams has limited internet access and absolutely no access to any Internet based litigation support software.

Adequately reviewing this discovery with Mr. Williams while he has been incarcerated has been extremely difficult and challenging, and at times  impossible. Our work with Mr. Williams during this period of pretrial preparation is critical and is indispensable to Mr. Williams' ability to obtain a fair trial. In *Maine v. Moulton*, 474 U.S. 159, 170 (1985), the Supreme Court recognized this, stating, "the assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself."  *See Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense"), rev'd on other grounds, *Bell v. Wolfish*, 441 U.S. 520 (1979); *see also Basciano v. Martinez*, 2007 WL 2119908 (E.D.N.Y. 2007) (recommending that district court grant relief based on infringement of Sixth Amendment right caused by institution's requirement that meetings with counsel be non-contact ones, where detainee's counsel "vividly described the volume of documents they must review with their client during a typical meeting and the lengthy and burdensome process entailed by the requirement that this review be conducted through a screen with two sets of documents, rather than side by

Hon. Analisa Torres
February 17, 2016

side," and "repeatedly emphasized that the time lost through this cumbersome procedure was impairing their ability to prepare for trial").

In sum, due to the unique circumstances of this case, the daunting scope of pretrial discovery, the thousands of pages of documents that must be examined (which surely will increase as the process goes forward, and, will compel the review of other documents beyond those already in the government's database), and the complexity of the allegations, factual issues and legal questions presented, Mr. Williams is unable to effectively or meaningfully assist and participate in his own defense while incarcerated.  If Mr. Williams was granted bail subject to strict conditions of release, including the restriction of his movement, these staggering mental and physical challenges in preparing for his trial in the next few months could make the transition from impossible to possible. There is a readily available structure that can be put in place to assure his appearance at trial and reasonably assure his ability to prepare for it. Mr. Williams should not be deprived of daily, unencumbered access to the discovery, experts, investigators, consultants and a meaningful collaboration with his attorneys, if he is to have any true capacity to assist in his own defense.

**Proposed Bail Package**

Accordingly, as proposed in his prior bail application, Mr. Williams maintains that the following combination of conditions will reasonably assure both the safety of the community and his appearance in court:

- $200,000 bond, secured by the signatures of five financially responsible parties including family members and close friends, and three properties belonging to family and close friends with a combined equity in excess of $150,000;

- Home detention and electronic monitoring, whereby Mr. Williams would be confined to his residence except for employment, scheduled child care responsibilities, court appearances, meetings with counsel and pretrial services officer, and other approved obligations and responsibilities;

- Strict pretrial supervision;

- Surrender of all travel documents;

- No contact with victim consumers;

- No participation in debt collection activities;

- Travel restriction to the Northern District of Georgia and the Southern and Eastern Districts of New York.

Hon. Analisa Torres
February 17, 2016

### Conclusion

Mr. Williams continues to be neither a serious risk of flight nor a danger to the community.   In addition to being isolated from his family for the past fifteen months, he now is in severe pain as a result of his back and hip ailments.  As a result, he has struggled to focus on his legal problems and he has been unable to assist meaningfully in his defense because of the voluminous discovery.

Based on an analysis of the factors to be considered pursuant to *18 U.S.C. § 3142(g)*, there exists a combination of conditions that will reasonably assure the appearance of Mr. Williams in court and the safety of the community.   Accordingly, we respectfully request that Your Honor reconsider the prior ruling of this Court and release Mr. Williams pursuant to the conditions described in the proposed bail package.

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco


MSD/mb

cc:     Daniel Tehrani, Esq.
        Assistant United States Attorney
        By Electronic Mail

        Mr. John Todd Williams